## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-1614

JOHN PIERRE FRENCH,

     Plaintiff,

v.

DENVER PUBLIC SCHOOLS,

     Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff John Pierre French, by and through his counsel, Glen E. Matthews and Whiting G. Dimock of DIMOCK MATTHEWS LLC, respectfully alleges for his Complaint and Jury Demand as follows:

### I. NATURE OF ACTION

1.     This is an action under the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") as amended by Title I of the Civil Rights Act of 1991; 20 U.S.C. §§ 1681–1688 ("Title IX"); 42 U.S.C. § 1983 Retaliation in Violation of 42 U.S.C § 1981; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA").

### II. JURISDICTION, VENUE, AND PARTIES

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff brings this action against Denver Public Schools, alleging violations of Title VII, 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, Title IX, 42 U.S.C. § 1983, and the ADEA. Mr. French's claim for attorneys' fees and costs is conferred by 42 U.S.C. §§ 1988, 2000e-5, and 12117.

3.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado. At the time of the events giving rise to this litigation, all of the parties resided in Colorado.

4.      Defendant Denver Public Schools ("DPS") is a body corporate pursuant to C.R.S. § 22-32-101, and at all times material conducted and transacted business out of 1860 Lincoln Street, Denver, Colorado 80203.

5.      Plaintiff John Pierre French is a citizen of the United States and a resident of and domiciled in Colorado. Mr. French was an employee at Defendant DPS until he was unlawfully discharged.

6.      At all times relevant hereto, Defendant DPS has been an employer within the meaning of Title VII, 42 U.S.C. § 1981, and the ADEA.

### III. PROCEDURAL REQUIREMENTS

7.      The procedural prerequisites for filing this suit have been met. On or about March 4, 2022, Mr. French filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD") in Denver, Colorado. The charge was filed within 180 days of the occurrence of one or more of the alleged unlawful employment practices pursuant to 42 U.S.C. §§ 2000e, et seq. and 42 U.S.C. § 12101, et seq.

8.      On March 27, 2023, CCRD issued Mr. French a Notice of Right to Sue. Mr. French is filing this Complaint and Jury Demand within 90 days of receiving the Notice of Right to Sue.

### IV. FACTUAL ALLEGATIONS

9.      Mr. French is a **59-year-old** Black man. He worked for DPS for nine years, until he was unlawfully discharged in 2022.

10.     Mr. French was a dedicated teacher and basketball coach.

11.     Mr. French taught at Bruce Randolph School, a DPS school located at 3955 Steele Street, Denver, Colorado 80205.

12.     His role included guest teaching, being a paraprofessional, hall monitoring, and other interaction with Bruce Randolph students.

13.     Mr. French always could be counted on to step in and help. In fact, during the fall 2021 semester, Mr. French was publicly described by members of Bruce Randolph's staff like this, "Mr. French is always willing to jump in to support students, cover classes, cover In School Suspension, and more. We all appreciate all that you do. Thank you so much for being such a great team member and wanting what's best for students."

14.     Despite Mr. French's hard work and dedication, he was subjected to ugly racial discrimination and abuse orchestrated by DPS and its agents.

15.     In or about 2021-2022, DPS used its own students and administrators to reduce Mr. French's teaching and coaching career into a vulgar joke.  In fact, DPS conducted a masterclass in race and sex-based discrimination toward Mr. French.

**DPS Weaponized Students Against Mr. French**

16.     Bruce Randolph teachers describe the administration using Hispanic students to do their "dirty work." For example, Bruce Randolph administrators used aggressive students with multiple incidences of violence and threats to harass and intimidate Mr. French.

17.     DPS allowed and encouraged these students to call Mr. French a "**Nigger**" or "**Bitch Ass Nigger**" multiple times a week while he was working. And they did with impunity.

18.     Mr. French made DPS aware of the harassment and the impact it was having on his life and career.

19.     In fact, DPS is in possession of emails from Bruce Randolph teachers memorializing persistent incidents of hate speech including the repeated use of the word "Nigger."  For example, there is an email from a Bruce Randolph staff member stating, "I was present on two separate occasions when a student called Mr. French the "n" word. It was horrific."

20.     Further, students were allowed to make physical contact with Mr. French, including physically pushing Mr. French.

21.     On one occasion Mr. French lost his balance and nearly hit his head. Mr. French was told by his supervisor Juanita Valdez, Assistant Principal, that he wasn't allowed to report students attacking him.  Ms. Valdez said, "you can't say that" when Mr. French discussed reporting the incident to district security.

22.     DPS security officer Randy Walker, in cahoots with Dean of Culture Joseph Kidane, intentionally failed to respond to Mr. French's calls for help with armed students, leaving him vulnerable to violence and abuse.

23.     In or about 2021- 2022 multiple DPS teachers at Bruce Randolph faced death threats from students.

**DPS Security Intentionally Put Mr. French in Danger**

24.     Multiple teachers have reported that DPS security at Bruce Randolph would fail to respond to calls for help from teachers who complained about racial discrimination.

25.     This is especially damning considering that Mr. Walker and Mr. Kidane failed to report and under reported to the Department of Safety regarding physically and sexually violent incidents that occurred at Bruce Randolph, including incidences of racial violence and possession of weapons – incidents that are required to be reported and required to be addressed for the safety of all members of the Bruce Randolph community.

26.     At all times relevant Defendant DPS was engaged in State action and acted "under color of" State law.

27.     DPS detained and investigated criminal suspects and used Denver Police Officers to effectuate school policies.

28.     DPS administrators failed to respond to Mr. French's cries for help or his properly reported incidents of racial transgressions.

29.     In fact, when Mr. French complained about race, DPS Principal Melissa Boyd and Mr. Kidane used DPS security to bully him into silence.

**Retaliation**

30.     In or about 2021, after Mr. French informed his supervisors at Bruce Randolph that he was going to report the discriminatory treatment to district officials, Bruce Randolph administration and security staff engaged in a pattern of shocking retaliatory abuse.

31.     Mr. Walker or Ms. Anderson would under report incidents to the Department of Safety in exchange for students harassing Mr. French.  Students were as much as told that they could harass and threaten Mr. French and others with impunity. They just needed to be "good with" security.

32.     To be clear, we have DPS security under reporting incidents of violence, racial hate speech, and weapons, then failing to respond to Mr. French's calls for help when trapped in dangerous situations with those students.

33.     Multiple witnesses report that Mr. Walker along with Mr. Kidane would laugh and mock Mr. French being called a nigger.

**DPS Hid Student Recantation Against Mr. French**

34.     On December 9, 2021, Mr. French was accused of attempting to sexually assault a female student, commenting on female students' volleyball shorts, and commenting on female

students "looking good."  That day Mr. French freely and without counsel spoke to Denver Police about the alleged incidents and they found the accusations groundless. <u>On December 10, 2021, the Complainant in the presence of her mother and Ms. Douglas Harris recanted.</u>

35.     Further, the mother of the Complainant stated, "I know when my daughter is lying and is not telling the truth."  The Complainant admitted that her allegations were all part of a conspiracy between her and other students to get Mr. French fired.

36.     The Complainant's mother discussed with Ms. Douglas Harris the impact false allegations could have on Mr. French, saying that she has family members whose lives have been "ruined" by false allegations.  Clearly, Ms. Douglas Harris ignored the lecture.

37.     Mr. French provided four witnesses to Ms. Douglas Harris, all of whom were present when Mr. French allegedly touched a female volleyball player and student.

38.     Even though DPS refused to investigate and get statements, all stated when asked that Mr. French did not touch any female student.  Moreover, Ms. Douglas Harris had a note from the Athletic Director saying that Mr. French was never in the gym during volleyball season. In other words, Ms. Douglas Harris had reliable information indicating that Mr. French had been falsely accused.

39.     However, DPS did nothing with this exonerating information and instead put Mr. French on administrative leave, which not only damaged his reputation and started rumors, but also interfered with his coaching.

40.     Multiple witnesses also verify that students openly boasted in front of Bruce Randolph teachers "we got Mr. French fired and now we are going to get Mr. Cordova fired." Additionally, emails sent by Bruce Randolph employees on December 12, 2021 affirm Bruce Randolph administration was told about these allegations.

**Phony Title IX Investigation**

41.     DPS's Title IX "investigation" into the December 9 allegations was a farse. Title
IX regulations hold K-12 schools accountable to respond <u>equitably</u> and <u>promptly</u> to sexual
misconduct allegations to ensure a transparent, reliable adjudication process. Every educational
institution that receives federal funding for education must have a coordinator who enforces Title
IX compliance and deals with reports and complaints.

42.     Here, that appears to be Hayley Ames. Per Title IX, once Bruce Randolph was
alerted to (or reasonably should have known about) sexual harassment or sexual assault
accusations on campus, Ms. Ames was legally obligated to promptly address the complaint.

43.     Ms. Ames, the designated Title IX Coordinator, did not question Mr. French until
on or around January 26, 2022. <u>This was six weeks after the initial incident</u>. Six weeks! Ms.
Ames' emails (January 25, 2022 at 5:51PM request for a 9:00AM meeting the following day;
and January 25, 2022 at 7:03PM) refer to her inquiry as an "investigation," refer to the meeting
as an "interview," and indicate that Mr. French was not allowed to have Union representation at
the interview.

44.     Most damning, Ms. Ames did not respond to Mr. French's repeated requests that
she speak with witnesses and colleagues about the incident.

45.     In contravention of the DPS Procedures for Investigating Title IX Complaints of
Sex-Based Discrimination/Harassment revised Nov. 18, 2021, it appears that Mr. French was
never presented with any documentation explaining the allegations, procedure or his rights as an
employee. Ms. Ames' closeout letter states:

>        Please note that neither party can be compelled to resolve a
>        complaint of sex-based harassment, discrimination or retaliation
>        informally, and either party may request an end to the informal
>        process at any time. Should you wish to end the informal process

and proceed with a formal Title IX grievance, please contact me
within seven (7) calendar days to make this request.

46.     Mr. French repeatedly asked Ms. Ames to interview witnesses and investigate

further. DPS intentionally disregarded the protection Title IX affords to respondents by ignoring

Mr. French's requests for investigation.

47.     Further, DPS intentionally did not secure video or even attempt to secure video to

verify the time and location Mr. French entered the building on that day.

48.     An elementary step to any meaningful investigation. Bruce Randolph

intentionally did not speak to witnesses that had the ability to exonerate Mr. French. DPS via Ms.

Ames refused to speak to any of the witnesses that Mr. French put forth. Ms. Ames' indifference

to the reputation and career of Mr. French is troubling.

49.     Moreover, DPS constructively demoted Mr. French by refusing to allow him to be

a guest teacher at Bruce Randolph. In the closeout letter, Ms. Ames indicated as follows:

The Title IX Coordinator has confirmed that the below action steps
will be sufficient to resolve the concerns described in the
complaint and the Title IX Coordinator (or Designee) believe that
no further action steps are necessary to end, correct the effects of,
or prevent future discrimination or harassment.

● Mr. French will no longer be utilized as a guest teacher at Bruce
Randolph

50.     Ms. Ames' letter restates three false accusations against Mr. French and

maliciously imposes consequences on Mr. French but does not state any facts, any specifics of

the allegations, any information about the investigation, or even any findings.

51.     The response provides no basis for imposing consequences; there was no

information gathering and no findings.

52.     The response provides no basis for preventing him from serving as a guest teacher and thereby reducing his income. The response tainted Mr. French's personnel file, thereby preventing him from securing employment anywhere else in DPS.

53.     It is noteworthy that before Ms. Ames even started her investigation into the December 2021 false allegations, school representatives told Mr. French that the allegations were false and unfounded. DPS's Title IX policy provides that the: "Coordinator must remain responsive to the Parties throughout the Informal Resolution or Grievance Process, if applicable, to ensure that any measures implemented are necessary and effective."

54.     During her investigation, Mr. French's repeated requests to have witnesses interviewed were ignored. After Ms. Ames issued her closeout report, Mr. French's requests for a letter exonerating him so he could seek employment and to see a final report or any evidence of the investigation were ignored.

55.     From Ms. Ames closeout letter: "Further, each of the parties - including yourself - met with the Title IX Coordinator (or Designee) and agreed that the Complainant's concerns would be best addressed via an informal process." This is **false.** Mr. French did not agree to an informal process. He consistently communicated that he wanted more investigating done because he knew he would be exonerated if an actual investigation were done. And the consent to an informal process that Ms. Ames' letter contemplates must be, pursuant to DPS's own policy, both voluntary and written. There was no such consent. For consent to be voluntary, the parties must understand what they are consenting to, and Mr. French did not receive an explanation of the policy, the formal and informal options, or his rights, so he could not have consented voluntarily.

**DPS Violated Title IX**

56.     DPS created a racialized hyper-sexualized work environment for Mr. French and failed to respect Mr. French's rights in the face of false allegations. For example, a female student told her mother that Mr. French was keeping her after school for inappropriate reasons, and the mother contacted the school. Mr. Kidane knew the report was false because he stated he "saw the student with her boyfriend" and that "she is always with her boyfriend after school." Mr. Kidane knew this accusation was false but allowed this student's false allegations of Mr. French to be part of his record.  Despite Mr. French pleading with Mr. Kidane to intervene and call the mother and report the incident per DPS protocol, Mr. Kidane refused.  Mr. Kidane failed to report the false allegation or create any consequence for the student who falsely accused Mr. French.  Another example of students doing the staff's bidding.

57.     On another occasion Mr. French was accused of touching a student in the Learning Center.  According to witnesses Ms. Boyd said Mr. French "doesn't touch kids, doesn't get involved in fights."  Even while acknowledging explicitly that Mr. French would never have done what he was accused of, Ms. Boyd did nothing to protect Mr. French against false sexual allegations. There were no consequences for the students. No process of any kind was initiated to address the violation of Mr. French's rights.

58.     Both Mr. Kidane and Ms. Boyd failed to report false allegations of sexual misconduct against Mr. French to Ms. Ames or anyone else. They chose not to protect Mr. French's rights and chose to further foster an environment where students could make false allegations against staff with impunity. No student who made false allegations against a staff member has been disciplined in any way.

59.     Now here for a third time both Mr. Kidane and Ms. Boyd failed to acknowledge that persistently accusing a black man of sexual deviance is fetishization of Black men which is a

form of racial and sexual prejudice. Further, Ms. Ames, Title IX Coordinator, was derelict in her duties under Title IX in failing to see that Mr. French not only is innocent of the allegations but also is himself a victim of Title IX violations. No women were subjected to repeated false allegations of sexual misconduct.

**"Everyone Knows What's Going on With Mr. French"**

60. Bruce Randolph leadership communicated with countless members of the school community that there were allegations against Mr. French and that he was placed on administrative leave. Mr. Kidane said, in a meeting with more than six people, "everyone knows what's going on with Mr. French, right?" Bruce Randolph administrators were present for this inappropriate comment and did nothing.

61. Mr. French was called back to school for an interview with no discretion when parents were present and could see that he was the person accused of touching a student.

62. On at least four occasions, students spoke about Mr. French getting fired because he touched girls and those students received no consequences from Bruce Randolph administration for saying this.

63. When the December 9, 2021 allegations were proved unfounded, Bruce Randolph failed to communicate that Mr. French was innocent. After three separate instances of false allegations, Mr. French has no hope of repairing his reputation.

**Impact on Coaching**

64. Like many DPS employees, Mr. French's income from DPS was not sufficient for him to live in the Denver Metro area. Mr. French supplemented his income by working as a basketball coach and referee at games, tournaments, and camps during evenings, weekends, and school breaks.

65.     Due to DPS's actions and failures, Bruce Randolph students and staff continued to spread unfounded rumors suggesting that Mr. French could not be trusted around young women. Mr. French has had difficulty securing the coaching and refereeing work that was a necessary supplement to his DPS income, and even more necessary after DPS discharged him from employment.

66.     When Mr. French has secured coaching and refereeing work, students and parents connected with Bruce Randolph have informed the individuals responsible for hiring him about their concerns regarding Mr. French – concerns based only on allegations proved to be unfounded yet still unaddressed by DPS.

67.     Mr. French suffers mental anguish and physical symptoms of stress due to the repeated experience of having job opportunities threatened and/or revoked due to foreseeable consequences of DPS's actions and inactions. With each new basketball job, he wonders when the allegations will become a problem, who will raise them, how publicly they will do so, and what the response will be. This ongoing stress and humiliation were entirely preventable by DPS.

## V. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Race and National Origin Discrimination in Violation of 42 U.S.C. § 1981

68.     Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

69.     Mr. French is African American man who was subjected to discrimination in his terms and conditions of employment perpetrated by DPS because of his race and national origin.

70.      Defendant DPS discriminated against Mr. French in violation of 42 U.S.C. § 1981 by subjecting Mr. French to a hostile work environment because of his race and by creating and tolerating a hostile work environment because of his race.

71.     During his employment, Mr. French was subject to repeated instances of racial and national origin discriminatory intimidation, ridicule, and harassment, including flagrantly false accusations regarding sexual desires, unfair discipline, and termination of his employment, by Defendant DPS.

72.     The hostile work environment to which Mr. French was subjected was perpetrated by Defendant DPS's agents with direct supervisory authority over Mr. French and occurred on a frequent and routine basis over a substantial period of time.

73.     Defendant DPS was aware of, and intentionally participated in, the racial and national origin motivated misconduct.

74.     Defendant DPS failed to take prompt or effective action to prevent, correct, or remedy the race-based hostile work environment experienced by Mr. French.

75.     Mr. French fully qualified for continued employment with DPS yet was terminated.

76.     Defendant DPS treated Mr. French less favorably than similarly situated non-black counterparts.

77.     DPS committed the unlawful employment practices with malice or with reckless indifference to Mr. French's federally protected rights. The effect of the discrimination complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his employment status because of his race.

78.     Defendant DPS discharged Mr. French by allowing false allegations to serve as a pretextual reason to discharge him from DPS.

79.     Mr. French is entitled to recover damages for the discriminatory conduct described herein pursuant to 42 U.S.C. §§ 1981, 1983, and 1988.

80.     As a direct and proximate result of DPS's actions, Mr. French suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out-of-pocket expenses incurred to mitigate his damages, loss of future career advancement, and statutory damages.

81.     Mr. French is entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

<u>SECOND CLAIM FOR RELIEF</u>
**Race and National Origin Discrimination in Violation of Title VII**

82.     Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

83.     Plaintiff, an African American, was in a protected race and national origin class under Title VII.

84.     Mr. French was singled out for non-existent, unsupported reasons, and then terminated because of his race and complaints of discrimination and harassment based on his race.

85.     Mr. French was fully qualified for continued employment with DPS yet was terminated.

86.     The racially hostile work environment to which Mr. French was subjected was perpetrated by Defendant DPS's agents with direct supervisory authority over Mr. French and occurred on a frequent and routine basis over a substantial period of time.

87.     Defendant DPS treated Mr. French less favorably and discriminated against him by subjecting him to adverse treatment by using racial slurs and epithets, sabotaging his work, and terminating him for baseless and falsified reasons because of his race and/or national origin.

88.     Despite its actual or inferred knowledge about the severe or pervasive racial harassment experienced by Mr. French, Defendant DPS did not take reasonable care to prevent or correct the harassment experienced by Mr. French.

89.     These acts or omissions by Defendant DPS caused the racially hostile work environment experienced by Mr. French.

90.     Defendant DPS constructively discharged Mr. French by making his working conditions so intolerable that a reasonable person in Mr. French's position would be unable to continue in his employment.

91.     Mr. French is entitled to recover damages for the discriminatory conduct described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

92.     The racially hostile work environment and other acts or omissions of Defendant DPS and its agents, supervisors, and employees reflect Defendant DPS's reckless and willful and wanton indifference or hostility to Mr. French's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment and promotional opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering, and Mr. French's attorneys' fees and costs in bringing this action.

93.     Mr. French is entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

### THIRD CLAIM FOR RELIEF
### Sex and Gender Discrimination in Violation of Title VII

94.     Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

95.     Plaintiff is a man. Sex is a protected class under Title VII.

96.     Mr. French was subjected to a sexually hostile work environment during his employment with Defendant DPS, as he was subjected to unwelcome harassment and repeated false allegations based on his sex.

97.     As described in the paragraphs above, the actions or omissions of Defendant DPS and its agents, supervisors, and employees were subjectively and objectively abusive, severe, or pervasive, and altered the terms and conditions of Mr. French's employment.

98.     The sexually hostile work environment to which Mr. French was subjected was perpetrated by Defendant DPS's agents with direct supervisory authority over Mr. French and occurred on a frequent and routine basis over a substantial period of time.

99.     Defendant DPS knew or should have known about the severe or pervasive sexual harassment that Mr. French was experiencing because Defendant DPS's supervisors and managers created and/or observed it, because the harassment was frequent, notorious, and public in nature, and/or because Mr. French took advantage of and followed Defendant DPS's grievance procedures.

100.    Despite its actual or inferred knowledge about the severe or pervasive sexual harassment experienced by Mr. French, Defendant DPS did not take reasonable care to prevent or correct the harassment experienced by Mr. French.

101.    These acts or omissions by Defendant DPS caused the sexually hostile work environment experienced by Mr. French.

102.    Defendant DPS constructively discharged Mr. French by making his working conditions so intolerable that a reasonable person in Mr. French's position would be unable to continue in his employment.

103.    Defendant DPS engaged in the above-described conduct with malice or reckless indifference to Mr. French's federally protected rights within the meaning of Title VII.

104.    The sexually hostile work environment and other acts or omissions of Defendant DPS and its agents, supervisors, and employees reflect Defendant DPS's reckless and willful and wanton indifference or hostility to Mr. French's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment and promotional opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering, and Mr. French's attorneys' fees and costs in bringing this action.

**FOURTH CLAIM FOR RELIEF**
**Retaliation in Violation of Title VII**

105.    Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

106.    At all relevant times, Mr. French was qualified to perform his job responsibilities and satisfactorily performed the duties of his positions.

107.    In 2021-2022 Mr. French participated in statutorily protected activity by opposing practices targeted at him that were unlawful under Title VII, including discrimination and harassment based on race, sex, and/or sex-plus-race, and national origin, by filing and notifying DPS of his CCRD complaint.

108.    As a direct result of Mr. French's opposition to activities prohibited by Title VII, Defendant subjected him to actions which a reasonable employee would have found materially adverse, including but not limited to requiring him to work in a hostile work environment which materially and adversely affected the terms and conditions of his employment, subjecting him to heightened scrutiny, subjecting him to adverse treatment and harassment to which his similarly

17

situated counterparts were not subject, terminating his employment, and failing to address or correct false sexual allegations along with other materially adverse actions.

109.    DPS's retaliation against Mr. French arose out of, was caused by, and was like and related to the discrimination Mr. French opposed.

110.    DPS treated Mr. French more adversely than his similarly situated counterparts who did not voice opposition to DPS's discrimination.

111.    DPS's asserted reasons for taking adverse actions against Mr. French were a pretext for illegal retaliation and did not actually motivate DPS's actions.

112.    As a direct and proximate result of DPS's actions, Plaintiff has suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out-of-pocket expenses incurred to mitigate his damages, loss of future career advancement, and statutory damages.

## FIFTH CLAIM FOR RELIEF
### Retaliation in Violation of 42 U.S.C. § 1981

113.    Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

114.    Mr. French participated in statutorily protected activity by opposing practices targeted at him that were unlawful under § 1981, including discrimination and harassment based on race, national origin, and sex, by filing and notifying DPS of his CCRD complaint.

115.    Mr. French reported the racial discrimination and harassment on multiple occasions and to multiple DPS managers and human resources employees.

116.    DPS, acting through its officials, managers, supervisors, and other employees, retaliated against Mr. French by, among others, failing to promote him, disciplining him in

18

response to his complaints of discrimination, and ultimately terminating him after he filed a complaint with CCRD.

117.    Defendant acting through its officials, managers, supervisors, and other employees, treated Mr. French more adversely than his similarly situated counterparts who did not take part in protected conduct opposing race discrimination in the workplace.

118.    The effect of the practices complained of in the forgoing paragraphs has been to deprive Plaintiff of his right to make and enforce contracts, and the enjoyment of the benefits of employment, and otherwise adversely affect his status as an employee because he engaged in activity protected by 42 U.S.C. § 1981.

119.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

120.    DPS's conduct violated 42 U.S.C. § 1981.

121.    As a direct and proximate result of DPS's actions, Plaintiff has suffered economic and non-economic damages, including loss of wages, loss of future wages, loss of future earning potential, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, loss of out-of-pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages. enjoyment of life, and other non-pecuniary losses.

## SIXTH CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1981;
### Violation of the Fourteenth Amendment's Equal Protection Clause

122.    Mr. French hereby incorporates all the paragraphs of this Compliant as though fully set forth herein.

123.    Mr. French is an African American man who was subjected to discrimination in his terms and conditions of employment perpetrated by DPS because of his race and national origin.

124.     Defendant was acting under color of state law in its actions and inactions at all relevant times.

125.     During his employment, Mr. French was subject to repeated instances of racial and national origin discriminatory intimidation, ridicule, and harassment, including flagrantly false accusations regarding sexual touching of students, unfair discipline, and termination of his employment, by Defendant DPS.

126.     Additionally or alternatively, Defendant created abusive working conditions for Mr. French due to harassment based on his race, sex, and/or sex-plus-race where such conditions were not present for similarly-situated non-black and/or female DPS employees.

127.     The harassment based on sex and/or race to which Defendant subjected Mr. French was pervasive and/or severe enough to alter the terms, conditions, or privileges of his employment and create a hostile or abusive work environment.

128.     Defendant had no compelling governmental interest in discriminating against Mr. French on the basis of his race, sex, and/or sex-plus-race.

129.     The acts and omissions of Defendant were engaged in pursuant to the policies, customs, and practices of DPS, which treats African American male employees less favorably than Caucasian and/or female DPS employees.

130.     At all relevant times, DPS's discrimination against African Americans and men was a persistent or widespread practice that constitutes the standard operating procedure of Defendant, and sex and race discrimination and harassment was so widespread within DPS so as to constitute a custom or usage with the force of law.

131.     Defendant knew or should have known of DPS's widespread and pervasive discrimination against African Americans and men. In light of this knowledge, Defendant could

20

have and should have changed its policies and/or pursued reasonable methods for training, supervising, and disciplining DPS staff regarding race and sex discrimination, but made a deliberate choice not to do so.

132.    Defendant's failure to sustain any of Mr. French's complaints of discrimination during the internal "investigation" thereof demonstrates that DPS's discriminatory and harassing conduct against Mr. French was carried out pursuant to the customs, policies, practices, and regiment of training of DPS, and that such conduct is customary within DPS.

133.    Because DPS created and tolerated a custom of discrimination and harassment based on race and sex, and failed, despite the obvious need to do so, to adequately train, discipline, and supervise staff in this area, individuals including Mr. French have repeatedly been subjected to violations of their constitutional and statutory rights.

134.    Mr. French is entitled to recover damages for the discriminatory conduct described herein pursuant to 42 U.S.C. §§ 1981, 1983, and 1988.

135.    Mr. French is also entitled to recover his reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

**SEVENTH CLAIM FOR RELIEF**
**Sex and Gender Discrimination in Violation of Title IX**

136.    Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

137.    Mr. French was a protected person under Title IX at all relevant times.

138.    Mr. French was subject to sex-based employment discrimination.

139.    Mr. French was subject to a sham investigation and then terminated based upon false allegations. This was an egregious outcome.

140.    Mr. French, a black man, was continually falsely accused of touching female students.

141.    Those false allegations of touching were based upon his gender and used to unlawfully terminate his employment.

## EIGHTH CLAIM FOR RELIEF
**Age Discrimination in Violation of the Age Discrimination in Employment Act**

142.    Mr. French hereby incorporates all the paragraphs of this Complaint as through fully set forth herein.

143.    By virtue of his age, Plaintiff belongs to a protected group under the ADEA.

144.    DPS subjected Plaintiff to less favorable terms and conditions of employment based on his age. This treatment included, but was not limited to: assigning him to the most difficult and most demeaning responsibilities; hiring younger paraprofessionals without allowing Plaintiff to interview for the position; unfairly scrutinizing Plaintiff's work and making it more difficult for him to do his job; failing to address Plaintiff's numerous complaints about discrimination; demoting Plaintiff by eliminating responsibilities based on unfounded allegations; placing Plaintiff on administrative leave; and ultimately eliminating his position.

145.    The discriminatory actions of DPS were done knowingly and willfully, justifying an award of liquidated damages.

146.    As a direct and proximate result of DPS's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## NINTH CLAIM FOR RELIEF
**Retaliation in Violation of the Age Discrimination in Employment Act**

147.    Mr. French hereby incorporates all the paragraphs of this Complaint as though fully set forth herein.

148.    Plaintiff participated in statutorily protected activity by opposing practices targeted at him that were unlawful under the ADEA.

149.    As a result of Plaintiff's protected opposition to discrimination, DPS retaliated against him by subjecting him to less favorable terms and conditions of employment, as described in this Complaint, including, but not limited to: treating him in a demeaning manner and allowing students to do the same without consequence; making insulting comments about him; failing to investigate his concerns of discrimination and retaliation; demoting him; placing him on administrative leave; and ultimately terminating him.

150.    DPS's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of his rights.

151.    DPS's conduct violated 29 U.S.C. § 623(d) of the ADEA.

152.    As a direct and proximate result of DPS's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law, including, but not limited to the following:

a)  Appropriate declaratory and other injunctive and/or equitable relief;

b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, mental anguish, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c) Back pay and benefits;

d) Reinstatement or front pay and benefits;

e) All economic losses on all claims allowed by law;

f) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

g) Pre- and post-judgment interest at the highest lawful rate; and

h) Any further relief that this court deems just and proper, and any other relief as allowed by law.


**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted June 23, 2023.

By:   DIMOCK MATTHEWS LLC

*s/ Glen E. Matthews*
Glen E. Matthews
3900 E. Mexico Ave., Ste. 300
Denver, Colorado 80210
Phone: (303) 578-4452
Email: g@dimockmatthews.com

*s/ Whiting G. Dimock*
Whiting G. Dimock
3900 E. Mexico Ave., Ste. 300
Denver, Colorado 80210
Phone: (303) 578-4452
Email: w@dimockmatthews.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
c/o Dimock Matthews LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80206

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

By:     DIMOCK MATTHEWS LLC

*s/ Glen E. Matthews*
Glen E. Matthews
3900 E. Mexico Ave., Ste. 300
Denver, Colorado 80210
Phone: (303) 578-4452
Email: g@dimockmatthews.com

*s/ Whiting G. Dimock*
Whiting G. Dimock
3900 E. Mexico Ave., Ste. 300
Denver, Colorado 80210
Phone: (303) 578-4452
Email: w@dimockmatthews.com

**CERTIFICATE OF SERVICE**

I certify that, on June 23, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Aaron Thompson
aaron_thompson2@dpsk12.net

Brent Jordheim
brent_jordheim@dpsk12.org

ATTORNEYS FOR DEFENDANT

*s/ Glen E. Matthews*
Glen E. Matthews