**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 23-cv-01614-NYW-MDB

JOHN PIERRE FRENCH,

      Plaintiff,

v.

DENVER PUBLIC SCHOOLS,

      Defendant.

---

## ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT

---

This matter is before the Court on Plaintiff's Motion for Leave to Amend Complaint (the "Motion" or "Motion to Amend"), [Doc. 46]. The Court has reviewed the Motion, the Parties' briefing, and the applicable case law, and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth in this Order, the Motion to Amend is respectfully **DENIED**.

## BACKGROUND

This Court set out the factual and procedural background of this case in a previous Order, *see* [Doc. 45 at 1–10], and reiterates it here only as necessary for purposes of this Order. This civil rights lawsuit arises from Plaintiff John Pierre French's ("Plaintiff" or "Mr. French") employment at Bruce Randolph School, which is part of Defendant Denver Public Schools ("Defendant" or "DPS"). [Doc. 1 at ¶¶ 11, 22]. Among other things, Plaintiff alleges that he was subjected to frequent racial slurs by students, [*id.* at ¶ 17]; sometimes physically assaulted by students, [*id.* at ¶¶ 20–21]; and falsely accused of sexual harassment or assault by female students on numerous occasions while working for DPS,

[*id.* at ¶¶ 56–58]. Mr. French claims that DPS discriminated against him due to his race, sex, and age, [*id.* at ¶¶ 68–81, 122–145]; failed to intervene on his behalf, [*id.* at ¶¶ 20–22, 31–32]; and retaliated against him when he voiced concerns about his experiences with students to school administrators, [*id.* at ¶¶ 113–121]. Then, in December 2021, following another false complaint by a female student, Mr. French was placed on paid administrative leave during the pendency of a flawed Title IX investigation. [*Id.* at ¶¶ 34–39, 43–47]. Mr. French's employment terminated in early 2022. [*Id.* at ¶¶ 65, 139, 141].

Plaintiff initiated this lawsuit on June 23, 2023, asserting nine claims against DPS, including claims for race and national origin discrimination pursuant to 42 U.S.C. § 1981 ("Claim I") and Title VII ("Claim II"); sex discrimination pursuant to Title VII ("Claim III") and Title IX ("Claim VII"); retaliation claims under Title VII ("Claim IV") and § 1981 ("Claim V"); a Fourteenth Amendment equal protection claim under § 1981 ("Claim VI"); and discrimination and retaliation claims under the Age Discrimination in Employment Act ("ADEA") ("Claim VIII" and "Claim IX" respectively). [Doc. 1].

DPS filed a Motion to Dismiss on September 18, 2023, seeking dismissal of Plaintiff's claims under Rule 12(b)(6). [Doc. 19]. The deadline for amendment of pleadings was October 12, 2023. *See* [Doc. 13]. On July 2, 2024, this Court granted Defendant's Motion to Dismiss and sua sponte granted Plaintiff leave to file a motion for leave to amend his Complaint by no later than July 16, 2024. [Doc. 45 ("July 2 Order")]. Plaintiff timely filed the instant Motion. [Doc. 46]. Defendant responded in opposition to the Motion, *see* [Doc. 51], and Plaintiff has replied, *see* [Doc. 52]. The matter is thus ripe for disposition and the Court considers the Parties' arguments below.

**LEGAL STANDARDS**

Mr. French filed the Motion to Amend after the expiration of the deadline for amendment of pleadings as specified in the Scheduling Order. *See* [Doc. 13 at 7]. Therefore, as acknowledged by Plaintiff, the Court considers the Motion pursuant to a two-step inquiry. [Doc. 46]. First, the Court reviews whether Mr. French has demonstrated good cause for amendment pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1242 (10th Cir. 2014). Next, the Court weighs whether the amendment should be allowed pursuant to Rule 15(a). *Id.*

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (alterations in original)). This burden is satisfied, for example, when a party learns of new information through discovery, or when the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

By contrast, Rule 15 provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper, *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).  Whether to allow amendment is within the trial court's discretion.  *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996).

## ANALYSIS

### I.    Plaintiff Fails to Establish Good Cause Under Rule 16(b)

In its July 2 Order, this Court sua sponte granted Plaintiff leave to file a motion seeking to amend and expressly noted that any such motion "<u>must comply with the applicable Federal Rules of Civil Procedure</u>, Local Rules of Civil Practice, and Uniform Practice Standards."  [Doc. 45 at 41 n.9 (emphasis added)].  As implicitly acknowledged by Plaintiff, the Court did not grant Mr. French leave to amend so that he could simply ignore the first prong of the relevant standard but, instead, so he could file an appropriate motion to amend.  [*Id.*].  Even so, Plaintiff fails to make any meaningful Rule 16 arguments in his Motion to Amend.

Typically, the failure to assert an argument pursuant to Rule 16(b) is a sufficient basis alone to deny a motion to amend.  *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911

F.3d 1000, 1020 (10th Cir. 2018) (affirming denial of a motion to amend the scheduling order where the movant "made absolutely no arguments to show good cause for late amendment of the pleadings" (quotation omitted)); *Loma v. Allied Universal Sec. Servs.*, No. 21-cv-02214-NYW-SBP, 2024 WL 4554664, at *4 (D. Colo. Oct. 23, 2024) (denying motion to amend without reaching Rule 15 arguments where plaintiff failed to establish good cause). For the reasons that follow, the Court concludes that Mr. French falls far short of meeting his burden to establish good cause to amend the Scheduling Order.

First, Plaintiff asserts that good cause exists because he "learned of new information during a recent deposition of Melissa Boyd," that "was not available to Mr. French at the time of the original complaint." [Doc. 46 at 2]. But Mr. French only vaguely alludes to what he asserts is "new information," and fails to set forth in sufficient detail exactly what information he learned from Principal Boyd's deposition,[1] which frustrates the Court's ability to efficiently rule on the Motion and cuts against a finding of good cause. *See Seale v. Peacock*, No. 19-cv-03559-KMT, 2021 WL 927632, at *3 (D. Colo. Mar. 11, 2021) (finding that movant did not demonstrate good cause by stating that it "recently obtained [new] information" where the briefing was "devoid of any specific explanation" of when movant discovered the new information); *see also Bauer v. Crete Carriers Corp.*, No. 18-cv-01536-PAB-SKC, 2019 WL 7290939, at *5 (D. Colo. Nov. 1, 2019) (finding that moving parties did not demonstrate good cause for late amendment when they "[did] not elucidate on what it is they learned or when"). He not only fails to identify the "new information," but also fails to cite to portions of Ms. Boyd's deposition that revealed such

---

[1] Indeed, Plaintiff's counsel failed to omit the following sentence before filing the Motion with the Court: "Please provide more legal facts if you want me to extend the argument." [Doc. 46 at 2].

"new information."  Nor does he explain how he did not, and could not have, ascertained the "new information" prior to the October 12, 2023 deadline for amendment of pleadings—which was approximately four months after the filing of the original Complaint. *See* [Doc. 13 at 7]; [Doc. 1 (filed June 23, 2023)].  Without more detail, the Court cannot assess whether the information was, in fact, "new."

Second, the "good cause" provision "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished).  This good-cause burden may be satisfied where new information is learned during discovery.  *Gorsuch*, 771 F.3d at 1240.  In determining whether newly discovered information constitutes good cause for amendment of the Scheduling Order, the relevant "question is when the [moving party] first learned of new information that it sought to include in its pleadings."  *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015).  The mere fact that a party learned of new information after the deadline to amend the pleadings is alone insufficient to establish good cause to amend the Scheduling Order. "A party does not demonstrate good cause to modify a scheduling order to accommodate an otherwise untimely motion to amend by simply pointing to information learned after that deadline.  Rather, the party must also show it acted diligently in moving to amend once it learned of this new information."  *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020); *Gary G. v. United Healthcare*, No. 2:17-cv-00413-DN-DAO, 2021 WL 778578, at *1 (D. Utah Mar. 1, 2021) ("[T]he moving party must show good cause for failing to move to amend prior to the cutoff

date and for the length of time between learning of the new information warranting amendment and moving to amend.").

Indeed, "[e]ven when a party learns of new information through discovery, it must still act diligently in moving to amend." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 20-2298-JWB-ADM, 2021 WL 533827, at *4 (D. Kan. Feb. 12, 2021). For this reason, courts regularly look to when a party seeks leave to amend, in comparison to when it learned of new information necessitating the amendment, in determining whether good cause exists under Rule 16(b). *See, e.g.*, *Seale*, 2021 WL 927632, at *3–4; *Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2019 WL 3543624, at *10 (D. Colo. Aug. 5, 2019). Mr. French does not disclose when Ms. Boyd's deposition was taken in relation to his Motion to Amend, or the actions taken by counsel to raise those new allegations to the Court. [Doc. 46; Doc. 52]. Nor does he link the deficiencies identified in this Court's July 2 Order to Ms. Boyd's deposition testimony—or his proposed amendments to the operative pleading—to demonstrate his diligence in seeking amendment. [Doc. 46; Doc. 51].

Because Mr. French fails to provide the information necessary for this Court to make such a comparison, he fails to provide the Court with any basis from which to conclude that Mr. French acted with diligence with respect to when he first learned of the relevant information and when he moved to amend. *Cf. Fountain Valley*, 2015 WL 7770772, at *2 (where the plaintiff learned of information but "did not realize [its] significance" until discovery had progressed further, finding no good cause because the relevant question was "when the [p]laintiff first learned of new information that it sought to include in its pleadings"); *cf. Ward v. Acuity*, No. 21-cv-00765-CMA-NYW, 2021 WL

4947294, at *4 (D. Colo. Oct. 6, 2021) (finding no good cause for delay in amendment where the moving party did not initially realize the relevance of certain information it had in its possession), *report and recommendation adopted*, 2021 WL 5113580 (D. Colo. Nov. 3, 2021).

Having found no good cause under Rule 16(b), the Court need not address the Rule 15 standards for leave to amend. *See Husky Ventures*, 911 F.3d at 1020 (finding that the failure to assert an argument pursuant to Rule 16(b) is alone a sufficient basis to deny a motion to amend); *Gorsuch*, 771 F.3d at 1242 ("Having concluded [the movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so."). But because Defendant only addresses Rule 15, [Doc. 51], for the sake of completeness, the Court proceeds to address the Parties' arguments regarding futility.

## II.     Plaintiff's Proposed Amendments are Futile

Defendant contends that the Motion should be denied because Plaintiff's proposed amendments are futile. *See generally* [Doc. 51]. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004); *see, e.g.*, *id.* (futile because claim was subject to statute of limitations); *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (futile for failure to allege all elements of cause of action); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1200 (10th Cir. 2006) (futile because amended claim would seek relief barred by statute). In considering whether an amendment is futile, courts apply the same standard used to evaluate a claim under Rule 12(b)(6), accepting well-pleaded facts as true and reviewing solely to determine if the Complaint states a plausible claim for relief as amended.

*Weingarden v. Rainstorm, Inc.*, No. 09-2530-JWL, 2012 WL 13026753, at *1 (D. Kan. July 12, 2012).

The Court first addresses whether Mr. French's proposed amendments would save his municipal liability claims from Rule 12(b)(6) dismissal. In Section II.B, the Court considers the Parties' futility arguments with respect to Mr. French's Title VII hostile work environment, disparate treatment, and retaliation claims in turn. Finally, in Sections II.C and D, the Court considers the futility of Mr. French's proposed amendments to his Title IX and ADEA discrimination claims, respectively.

### A.    Municipal Liability

In its July 2 Order, this Court dismissed Mr. French's three municipal liability claims without prejudice pursuant to Rule 12(b)(6). [Doc. 45 at 11–16]. Mr. French reasserts these claims again in his proposed amended complaint, *see* [Doc. 50-1], and DPS contends that Mr. French's proposed amendments still fail to support municipal liability, [Doc. 51 at 1–5]. Mr. French responds by asserting arguments under three theories of municipal liability: an informal custom or policy, a decision by a final policymaker, and a failure to train. [Doc. 52 at 2–4].

Municipal liability requires the existence of an official policy or custom, a direct causal link between the policy or custom and the constitutional injury, and a showing that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–71 (10th Cir. 2013). To establish an official policy or custom, a plaintiff may point to: (1) a formal regulation or policy, (2) an informal custom that is so widespread it amounts to a custom or usage with the force of law, (3) a decision of an employee with final

policymaking authority, (4) final policymakers' ratification of their subordinates' decisions, or (5) a failure to adequately train or supervise employees. *See, e.g.*, *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

Like municipalities, school districts, as quasi-municipal agencies, can be sued "for depriving someone of constitutional or civil rights." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). But because "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell*, 436 U.S. at 691, a plaintiff must make two showings to hold a school district responsible for an employee's unconstitutional act. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). First, the plaintiff must show that the employee's actions "were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons*, 206 F.3d at 1029. Second, the plaintiff must show that "there is a direct causal link between the policy or custom and the injury alleged." *Hinton*, 997 F.2d at 782. Defendant challenges the sufficiency of Mr. French's proposed amendments to his municipal liability claims on both prongs. *See* [Doc. 51 at 5].

***Final Policymaking Authority.*** Mr. French asserts, without citing any support in case law or the record, that "Ms. Boyd, as the Head of High Schools for DPS, can be considered a final policymaker." [Doc. 52 at 3]. At all times relevant to this action, Melissa Boyd ("Principal Boyd") was Principal at Bruce Randolph School—and not Head of High Schools for DPS. *See* [Doc. 50-1 at ¶ 17]. Accordingly, the Court considers whether Mr.

French has plausibly alleged that Principal Boyd held final policymaking authority over the decisions at issue in this case.

Whether an employee is an official with final policy making authority is a matter of law to be determined by the court under state law or local law. *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008). In deciding whether an official is a final policymaker, courts primarily look to three factors: (1) whether the officials' discretionary decisions are constrained by general policies, (2) whether the decisions are reviewable by others, and (3) whether the decisions were within the official's authority. *Dill v. City of Edmond*, 155 F.3d 1193, 1211 (10th Cir. 1998).

Importantly, DPS and its actors are constrained by the District's Board of Education (the "Board") and its policies, including Board Policies AC, AC-R1, AC-R3, and GDQD. With respect to termination, Colorado law grants school boards the exclusive authority to terminate personnel unless the board delegates its authority to another individual. Colo. Rev. Stat. § 22-32-110(1)(h) (2024). Mr. French's proposed amended complaint does not allege that the Board has delegated the authority to make employment decisions to Principal Boyd. Thus, the Court concludes that Mr. French has failed to plausibly allege a decision by a final policymaker. *Cf. Jantz v. Muci*, 976 F.2d 623, 631 (10th Cir. 1992) (holding that the principal was not the final policymaker for employment decisions because the school board retained the authority to review the principal's decisions); *Singer v. Denver Sch. Dist. No. 1*, 959 F. Supp. 1325, 1330 (D. Colo. 1997) (holding that school's principal did not have final policymaking authority because the board of education retained the ability to change the principal's decision); *Milligan-Hitt*, 523 F.3d at 1228 (dismissing municipal liability claim premised on actions by the school district's

superintendent); *Cano-Rodriguez v. Adams Sch. Dist. No. 14*, No. 19-cv-01370-CMA-KLM, 2020 WL 6049531, at *12–13 (D. Colo. Apr. 22, 2020) (same), *report and recommendation adopted*, 2020 WL 6049595 (D. Colo. July 23, 2020).

    ***Widespread Informal Custom or Policy***.  To the extent Mr. French reasserts an "informal custom or policy" based on conduct other than DPS's alleged failure to train its personnel on DPS's antidiscrimination policies, the Court finds that Mr. French fails to state any such claim for the same reasons set forth in the Court's July 2 Order.  [Doc. 45 at 14–15].  Mr. French's remaining "custom or policy" arguments are duplicative of his arguments with respect to a failure to train theory of municipal liability.  *Compare* [Doc. 52 at 3 ("DPS had a custom or policy of failing to train its employees on antidiscrimination measures.")], *with* [*id.* at 4 ("Mr. French alleged this failure to train and failure of the staff to respond adequately is directly linked to the lack of training.")].  Thus, the Court considers these arguments within the framework of a failure to train theory of liability.

    ***Failure to Train.***  Mr. French's proposed amendments also introduce a failure to train theory of municipal liability.  DPS contends that Mr. French's proposed amendments fail to plausibly allege a pattern of unlawful discrimination, harassment, or retaliation "akin to that alleged by French that could demonstrate deliberate indifference at the District level," because he fails to plausibly allege that DPS was aware that an omission in its antidiscrimination policy training would lead to a constitutional violation, and fails to "link any claimed individual violation of his rights to a municipal policy or custom."  [Doc. 51 at 5].

    "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see*

*also Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of

'inadequate training'" is "far more nebulous, and a good deal further removed from the

constitutional violation, than was the policy in *Monell*."). Where a *Monell* claim is based

on an alleged failure to train, the plaintiff's allegations must "reflect[] a 'deliberate' or

'conscious' choice by [the] municipality." *City of Canton v. Harris*, 489 U.S. 378, 389

(1989).

"A pattern of similar constitutional violations by untrained employees is ordinarily

necessary to demonstrate deliberate indifference for purposes of failure to train."

*Connick*, 563 U.S. at 62 (quotation omitted). "Policymakers' continued adherence to an

approach that they know or should know has failed to prevent tortious conduct by

employees may establish the conscious disregard for the consequences of their action—

the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*, 563 U.S. at 62

(quotation omitted). But "[w]ithout notice that a course of training is deficient in a particular

respect, decisionmakers can hardly be said to have deliberately chosen a training

program that will cause violations of constitutional rights." *Id.*; *see also Est. of Lobato by*

*& through Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL

1197295, at *7 (D. Colo. Mar. 31, 2017) ("Notice of particular deficiencies in a training

program is the crux of a failure-to-train theory."). The Court thus considers whether the

proposed amendments sufficiently allege a pattern of similar constitutional violations to

put DPS on notice of any alleged deficiency in its antidiscrimination policy training.

Mr. French alleges that while DPS requires all staff members to attest that they

read DPS's antidiscrimination policy, [Doc. 50-1 at ¶ 19], it nevertheless does "not provide

training to teachers and staff regarding the complaint process or the investigation

procedure" provided for in the policy, [*id.* at ¶ 24]. DPS argues that Mr. French fails to allege any "similar incidents" sufficient to satisfy his burden of establishing that, prior to the events underlying Mr. French's claims, DPS was aware that its antidiscrimination policy training caused constitutional violations. [Doc. 51 at 5]. The Court respectfully agrees.

In Reply, Mr. French argues (without any supporting citations to legal authority or the proposed amended complaint) that DPS's deliberate indifference "to the rights of Black employees" can be "inferred" from the alleged lack of "district intervention, . . . effort by Ms. Boyd to enlist district resources to address the rampant use of anti-Black slurs, . . . [and] discipline of students." [Doc. 52 at 4]. Mr. French also argues that deliberate indifference can be inferred from the "general disregard that Bruce Randolph leadership exhibited for the impact of the environment on Mr. French." [*Id.*]. But these broad, vague references to unidentified allegations in his proposed amended complaint fail to actually identify any "similar incidents" and appear to rely primarily on Mr. French's allegations regarding his individual experience. This is not sufficient for purposes of a failure to train theory of liability. *Connick*, 563 U.S. at 62. Accordingly, the Court concludes that Mr. French's proposed amendments fail to adequately state a claim for municipal liability against DPS, and thus, his proposed amendments are futile as to Claims I, V, and VI.

### B.    Title VII Discrimination Claims

The Court next considers whether Mr. French's proposed amendments state cognizable claims under Title VII, which provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, sex, . . . or national origin." 42 U.S.C. § 2000e–2(a). The proposed amended complaint asserts theories of hostile work environment, disparate treatment based on his race and sex, and retaliation. The Court considers each in turn.

### 1. Hostile Work Environment

"[H]ostile work environment harassment arises when [the alleged discriminatory conduct] 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Exposure to a hostile work environment is established when: (1) a plaintiff is a member of a protected group; (2) a plaintiff has been subject to unwelcome harassment; (3) the harassment was based on the protected characteristic; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014). "Isolated or trivial episodes of harassment are insufficient" to create a pervasively abusive environment, *Honeycutt v. Safeway, Inc.*, 475 F. Supp. 2d 1063, 1075 (D. Colo. 2007) (quoting *Meritor*, 477 U.S. at 65); rather, "there must be a steady barrage of opprobrious [discriminatory] comments," *Semsroth v. City of Wichita*, 304 F. App'x 707, 722 (10th Cir. 2008) (quotation omitted).

In evaluating a hostile work environment claim, the Court examines "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (quotation omitted). "[A] [racially or] sexually objectionable environment must be both objectively and subjectively offensive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). To survive a motion to dismiss, Plaintiff "must allege facts that make [his hostile work environment] claim at least plausible." *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015).

This Court previously dismissed Mr. French's hostile work environment claim without prejudice pursuant to Rule 12(b)(6). [Doc. 45 at 17–18]. Mr. French reasserts these claims again in his proposed amended complaint; however, because his proposed amendments do not include additional allegations supporting a sexually hostile work environment claim, the Court concludes that Mr. French fails to plead that any of his alleged mistreatment was based on his sex for the same reasons set forth in its July 2 Order. [*Id.* at 38–39]; *see also infra*, Section II.C. Accordingly, the Court's hostile work environment analysis focuses on whether Mr. French's proposed amendments adequately allege a racially hostile work environment.

DPS argues that Mr. French's proposed "new allegations fail to sufficiently plead a hostile work environment claim." [Doc. 51 at 6]; *see also* [*id.* at 5–7]. Assuming without deciding that Mr. French has plausibly alleged words or conduct that is sufficiently severe or pervasive to establish a racially hostile work environment, the Court turns to whether Mr. French has plausibly alleged a factual basis for imputing liability to DPS.

***Basis for Employer Liability.*** In addition to establishing the hostile work environment elements, a plaintiff must also identify a basis for holding the employer liable under Title VII. *Harsco Corp.,* 475 F.3d at 1186. And courts within the Tenth Circuit have

dismissed hostile work environment claims where the facts failed to plausibly allege a basis for employer liability. *See, e.g.*, *Evans v. Wettach*, No. 22-cv-00626-RJS-DAO, 2021 WL 6884560, at *2 (D. Utah Nov. 15, 2021), (finding that plaintiff failed to state a claim for relief where he failed to plausibly allege a basis for imputing harassment to his employer), *report and recommendation adopted*, 2022 WL 444213 (D. Utah Feb. 14, 2022). Relevant here, an employer's negligence is an accepted basis for liability where the employer had actual or constructive knowledge of the hostile work environment and failed to adequately respond. *Grove v. Builders Tr. of N.M.*, No. CV 13-00001 JCH/KBM, 2013 WL 12328892, at *3 (D.N.M. Sept. 30, 2013).

Here, Mr. French argues that DPS "failed to adhere to the policies described in DPS Policy AC-R1 and did not take appropriate action to address the harassment." [Doc. 52 at 6]. A hostile work environment can be created when students harass teachers. *See Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1017 (9th Cir. 2018) (students' harassment of their teacher contributed to hostile work environment). However, an employer-defendant is liable for a hostile work environment only if it knew, or should have known, about the hostile work environment and neglected to take corrective action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 769–70 (1998) (Scalia & Thomas, JJ., dissenting); *see also Chapman v. Carmike Cinemas*, 307 F. App'x 164, 171 (10th Cir. 2009) (quoting *Harsco Corp.*, 475 F.3d at 1186) (a plaintiff must allege that the employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment").

Assuming that the harassment by Bruce Randolph students alleged by Mr. French was sufficiently severe and sustained to plead a cognizable claim for hostile work

environment, his proposed amendments fail to plausibly allege facts sufficient to show that DPS was aware of the harassment he was experiencing at Bruce Randolph.  Mr. French's allegations thus fail to establish a factual basis to impute the students' harassing behavior to DPS.  While Mr. French's proposed amendments include allegations regarding reports to DPS administrators and personnel, these allegations lack temporal and factual context.  *See, e.g.*, [Doc. 50-1 at ¶ 38 (alleging that a Bruce Randolph employee was "admonished" when she reported that a student had called Mr. French a "n*****" multiple times, without alleging when the employee made this report); *id.* at ¶ 41 (alleging that Mr. French "asked from [sic] help from Bruce Randolph school administrators" with no temporal context); *id.* at ¶ 42 (alleging that "Mr. French also reported the hostile treatment and racialized experience to several people at the district level" without identifying when or to whom he made these reports); *id.* at ¶ 44 (alleging that Mr. French "reported the hostile and racialized treatment he was experiencing" to a union representative (i.e., not a DPS administrator) and a DPS human resources employee without identifying when he made these reports); *id.* at ¶ 45 (alleging that Mr. French "also reported his concerns . . . to Deputy General Counsel for DPS" without identifying when he reported these concerns)].  Several of these allegations also rely on conclusory statements alluding to complaints of "hostile treatment" and a "racialized experience."  *See, e.g.*, [Doc. 50-1 at ¶¶ 42, 44].

Thus, Mr. French's proposed amended fails to sufficiently allege a factual basis for imputing students' opprobrious behavior to DPS.  *See Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 642 (1999) (holding that "the district could be liable for damages only where the district itself intentionally acted" by "remaining deliberately indifferent to

acts of teacher-student harassment of which it had actual knowledge*"*); *Smith v. Kelly Servs. Inc*, 802 F. App'x 728 (3d Cir. 2020) (affirming dismissal of hostile work environment claim asserted by substitute teacher based on racially abusive language by students because teacher failed to "explain[] why [the employer] should be liable, since she did not establish that it was aware of the situation"); *Paris v. Faith Props., Inc.*, No. 4:08-cv-00071JVB, 2009 WL 4799736, at *5 (N.D. Ind. Dec. 8, 2009) (dismissing Title VII hostile work environment claim brought by teacher based on students' sexual harassment because, by failing to "allege that she ever reported such behavior to the school," the plaintiff "failed to state a claim because the school cannot be deliberately indifferent to behavior of which it was unaware").

Accordingly, the Court finds the proposed amendments to his hostile work environment claim futile.

### 2.      Disparate Treatment (Claims II and III)

A prima facie case of Title VII race or sex discrimination requires evidence that: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (quotation omitted).  An "inference of discrimination" may be shown in various ways, including "actions or remarks made by decisionmakers," "preferential treatment given to employees outside the protected class," or "the timing or sequence of events

leading to plaintiff's termination." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (quotation omitted).

This Court previously dismissed Mr. French's disparate treatment claims pursuant to Rule 12(b)(6).  [Doc. 45 at 23–28].  DPS argues that Mr. French "still fails to identify relevant similarly situated employees to establish an inference of [race] discrimination,"[2] and that Mr. French's allegations "fail to demonstrate any sex-based discrimination and . . . any sex-based animus toward [Mr. French]."  [Doc. 51 at 9, 12].  Plaintiff fails to address DPS's arguments for dismissal of his Title VII disparate treatment claims in his Reply.  *See generally* [Doc. 52].[3]  The Court agrees with DPS and finds that Mr. French's proposed amendments fail to identify the requisite "similarly situated" employees to support a disparate treatment claim based on race or sex discrimination.

### 3.    Retaliation

To establish a claim for retaliation, Plaintiff must allege facts that plausibly show: (1) he engaged in protected opposition to discrimination; (2) he suffered an action that a

---

[2] A Title VII plaintiff can plausibly allege an inference of discrimination by alleging that "the employer treated similarly situated employees more favorably."  *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).  "Employees are similarly situated when they share a supervisor or decision-maker, must follow the same standards, and engage in comparable conduct."  *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).

[3] Indeed, Mr. French's only reference to "disparate treatment" claims under Title VII relates to DPS's arguments.  [Doc. 52 at 5 ("Regarding disparate treatment claims, the defendant argues that the plaintiff has not identified any similarly situated employees who were treated more favorably based on race or sex.")].  The Court is neither obligated nor permitted to construct legal theories on behalf of parties that they do not advance themselves—particularly when they are represented by counsel.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).

reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *See Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021). Protected activity for the purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII or ADEA proceeding or (2) opposing discrimination made unlawful by Title VII. *Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011), *aff'd*, 462 F. App'x 797 (10th Cir. 2012).

While Mr. French's proposed amendments include additional allegations as to the first element of his retaliation claim (i.e., protected activity), these allegations suffer from the same defects as those in his original Complaint – namely, vagueness as to the timing and content of his alleged communications with DPS personnel. *See, e.g.*, [Doc. 50-1 at ¶ 41 (failing to allege what "help" he asked for from Bruce Randolph administrators or when he asked for such help); ¶¶ 42, 44–45 (failing to allege what or when he reported "hostile" and "racialized treatment" or his "concerns")]. Mr. French also alleges that he "reached out" to Cesar Cedillo, a DPS employee,[4] to tell Mr. Cedillo that he was "tired of being called 'the n word.'" [*Id.* at ¶ 43]. However, Mr. French does not explain how this outreach communicated a belief that DPS was discriminating against him.

Thus, Mr. French's proposed additions fail to plausibly show that he communicated a belief that DPS was engaging in unlawful race or sex discrimination. *Cf. Va. Transformer Corp. v. Ebbert*, No. 7:18-cv-00143-EJD-RSB, 2019 WL 1415467, at *4 (W.D. Va. Mar. 28, 2019) (retaliatory termination under Title VII insufficiently pled where

---

[4] Although Mr. French explains that Mr. Cedillo is now the "Chief of Schools" for DPS, Mr. French fails to identify Mr. Cedillo's job title within DPS at the time of this alleged conversation. [Doc. 50-1 at ¶ 43].

plaintiff alleged that he "engaged in the protected activity of complaining about a discriminatory work environment" because plaintiff's vague allegations failed to "identify with sufficient particularity what the protected activity was or when it was" (cleaned up)); *Mayling Tu v. OppenheimerFunds, Inc.*, No. 1:10-cv-04971-PKC, 2012 WL 516837, at *10 (S.D.N.Y. Feb. 16, 2012) ("While an informal complaint to management may be protected activity, the plaintiff offers no evidence that she communicated a belief that [the defendant] was discriminating against her.  Absent such evidence, plaintiff's [complaints] do not support a retaliation claim." (citations omitted)); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (vague charge of discrimination in an internal letter or memorandum was insufficient to constitute opposition to an unlawful employment practice); *Balding-Margolis v. Cleveland Arcade*, 352 Fed. App'x 35, 45 (6th Cir. 2009) (vague claim in affidavit that the plaintiff reported sex- and age-based harassment, which was not supported by record evidence and was contradicted by plaintiff's prior deposition testimony, insufficient to establish plaintiff engaged in protected activity); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (vague allegation to manager of ethnocentrism insufficient to constitute protected activity); *Yomi v. Dejoy*, No. 21-cv-02709-ABA, 2024 WL 1075422, at *2 (D. Md. Mar. 12, 2024) (finding allegation that plaintiff "communicated discrimination" to a particular individual conclusory and concluding that the plaintiff had "not explained what the alleged protected activity was, other than in a vague, general, and conclusory (and thus non-cognizable) way"), *appeal docketed*, No. 24-1349 (4th Cir. Apr. 23, 2024).

The Court finds that the foregoing proposed amendments fail to sufficiently allege protected opposition, which requires that an employee convey to his employer a concern

that the employer has engaged in unlawful discrimination. *See Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187 (10th Cir. 2008). Accordingly, with respect to Claims IV and V, the Court finds Mr. French's proposed amendments futile.[5]

### C.    Title IX Discrimination (Claim VII)

Title IX of the Education Amendments Act of 1972 provides similar protections to Title VII. It prohibits discrimination "on the basis of sex" in educational programs or activities receiving federal funding. 20 U.S.C. § 1681(a). This includes a prohibition on employment discrimination in federally funded educational programs. *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535–36 (1982). Title IX also prohibits retaliation against individuals because they have complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (interpreting Title IX as creating a private right of action for such a claim); *see also Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315–16 (10th Cir. 2017).

Because Title IX "bars the imposition of [school] discipline where [sex] is a motivating factor in the decision to discipline," *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), the Court must ask: "do the facts alleged, if true, raise a plausible inference that the [school] discriminated against [the plaintiff] 'on the basis of sex'?" *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021) (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). Relevant here, if procedural irregularities are sufficiently numerous, lopsided, and/or important, they can sometimes support an inference of sex

---

[5] Because Mr. French's proposed amendments fail to adequately allege the requisite protected activity to support his retaliation claims, the Court does not reach Defendant's remaining arguments with respect to other elements of Mr. French's retaliation claims (e.g., causation).

discrimination.  *Purdue Univ.*, 928 F.3d at 669; *accord Univ. of Denver*, 1 F.4th at 831–34.  But a plaintiff cannot prove sex discrimination by merely identifying mistakes or imperfections in the process.  *Doe v. Samford Univ.*, 29 F.4th 675, 688 (11th Cir. 2022) ("A deviation from a Title IX policy is not, in and of itself, a violation of Title IX.").

DPS argues that the proposed amendments are futile because Mr. French still fails to allege any nonconclusory facts to support the inference that any bias in his investigation was sex-based, and because allegations that the investigation "suggests" sex-based motivations are not entitled to the presumption of truth.  [Doc. 51 at 14].  The Court again concludes that Mr. French's allegations of procedural irregularities in the Title IX investigation give rise to an inference of bias.  *See* [Doc. 45 at 35–38]; *Purdue Univ.*, 928 F.3d at 670 (reversing Rule 12(b)(6) dismissal of plaintiff's Title IX claim where procedural irregularities gave rise to inferences of bias).  However, because the Court still finds no basis from which it can infer that the bias is *based on sex*, Mr. French's proposed amendments are futile.  *Cf. Menaker v. Hofstra Univ.*, 935 F.3d 20, 31 (2d Cir. 2019) (noting that procedural deficiencies in investigation and adjudication of sexual assault complaint raised inference of bias generally and—*together with* allegations that the school was criticized for not taking female student's allegations of assault by male students seriously—plausibly supported "at least the needed minimal inference" that the bias *was gender-based*).

Mr. French proposes only two amendments regarding any sex-based bias (as opposed to a biased investigation, generally).  First, Mr. French alleges that "no men were involved in the investigation or decision-making process," which he claims "suggest[s] a gender bias in the process." [Doc. 50-1 at ¶ 99]; *see also* [Doc. 52 at 9 (speculating that

the "all-female investigative team may have been predisposed to believe the female complainant over Mr. French")].  The Court respectfully disagrees and finds that, without more, the fact that the Title IX investigators and the complainants against Mr. French were all female does not give rise to an inference that biases in his investigation were motivated by or because he is a male.

Second, Mr. French alleges that "the climate for schools in 2021 was such that school districts such as DPS were experiencing pressure to believe and protect students who reported inappropriate conduct from male authority figures," with "no similar pressure to believe or protect men from false claims."  [Doc. 50-1 at ¶ 101].  In his reply brief, Mr. French cites *Norris v. University of Colorado*, 36 F. Supp. 3d 1001, 1012 (D. Colo. 2019), in support of his argument that "the issues of public pressure in 2021 . . . make his Title IX claims plausible on their face."  [Doc. 52 at 10].   The Court is respectfully unpersuaded.

The plaintiff in *Norris* did not rely on vague allegations regarding "public pressure" in society generally to plausibly plead her Title IX claim.  *Norris*, 362 F. Supp. 3d 1001, 1015–16 (D. Colo. 2019) (noting "numerous allegations" relating to media pressure, the university's involvement in a national public awareness campaign aimed at combatting sexual assault on college campuses, statements made by the Title IX investigators involved, and United States Department of Education directives to college and universities, specifically); *see also id.* at 15 ("[C]ourts have voiced concern regarding claims of anti-male bias being conflated with pro-victim bias and have highlighted aspects similar to Plaintiff's claim as not being solely sufficient.") (collecting cases).  Moreover, Mr. French fails to allege any supporting facts for his conclusory assertion that school

districts "such as DPS" experienced "pressure" to believe and protect students only when male authority figures were implicated in wrongdoing.

Without more, the Court finds that the proposed amendments fail to plausibly allege sex-based or sex-motivated bias. *Cf. Menaker*, 935 F.3d at 33 n.48 ("It is precisely because procedural irregularity alone already suggests bias that even minimal evidence of *sex-based pressure* on the university is sufficient to establish bias on account of sex." (emphasis altered)); *Doe v. Oberlin Coll.*, 963 F.3d 580, 586–88 (6th Cir. 2020) (concluding that the plaintiff had "amply stated a claim for sex discrimination" where there were "clear procedural irregularities," a federal agency "was engaged in a systemic investigation of the College's policies," and the "facts of the case cast . . . doubt on the accuracy of the disciplinary proceeding's outcome" (quotations omitted)); *Doe v. Univ. of Ark.*, 974 F.3d 858, 865 (8th Cir. 2020) (concluding that a "dubious [disciplinary] decision . . . taken against the backdrop of substantial pressure on the University to demonstrate that it was responsive to female complainants" supported "an inference that a university is biased based on sex"); *Univ. of Denver*, 1 F.4th at 831.

### D.    ADEA Discrimination (Claim VIII)

This Court previously dismissed Mr. French's age discrimination claim without prejudice under Rule 12(b)(6) for failure to state a cognizable claim. [Doc. 45 at 39–41]. In its Response to the Motion to Amend, DPS argues that Plaintiff's proposed amendments fail to add supporting allegations sufficient to save the claim from dismissal. *See* [Doc. 51 at 14]. The Court respectfully agrees and finds Mr. French's counterarguments unpersuasive for two reasons.

First, Mr. French argues in his Reply that he "alleges that all paraprofessionals who remained employed at Bruce Randolph were younger than him and Barbara Johnson," and that "Ms. Boyd testified that were other presumably younger paraprofessionals she could have terminated but instead selected Mr. French." [Doc. 52 at 11]. But he fails to provide pinpoint citations to paragraphs of his proposed amended complaint that support his arguments. *See* [*id.*]. In fact, neither assertion appears to be supported by allegations in the proposed amended complaint. *See generally* [Doc. 50-1].

Second, the sole proposed amendment relating to Mr. French's ADEA discrimination claim fails to move the needle. [Doc. 50-1 at ¶ 58 ("DPS terminated the employment of Barbara Johnson, an older Black paraprofessional who was similarly situated to Mr. French, soon after terminating Mr. French's employment.")]. Without more information about Ms. Johnson (e.g., her age or the circumstances surrounding her termination), Mr. French's proposed amendment is merely another vague, conclusory allegation that falls short of saving his ADEA claim from Rule 12(b)(6) dismissal.

Accordingly, the Court finds that Mr. French's proposed amendments relating to his age discrimination claim are futile.

## III.    Costs

Finally, the Court notes that Mr. French's Reply includes a new argument regarding the propriety of awarding costs to DPS. [Doc. 52 at 12]. This Court's July 2 Order contemplates "award[ing] costs to DPS under Rule 54 and Local Rule 54.1 without further notice." [Doc. 45 at 41 n.9]. Because Mr. French failed to raise his argument regarding an award of costs in his Motion to Amend, *see* [Doc. 46], the Court declines to consider it. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion for Leave to Amend Complaint [Doc. 46] is **DENIED**;

(2)     Plaintiff's Complaint [Doc. 1] is **DISMISSED with prejudice**;

(3)     As the prevailing party, Defendant DPS is **AWARDED** costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1; and

(4)     The Clerk of Court is **DIRECTED** to close this case.


DATED:  December 19, 2024                    BY THE COURT:

                                                        _____
                                                        Nina Y. Wang
                                                        United States District Judge